Hamlin, J.
This case comes before the court on a motion to dismiss by defendants Janet E. Dutcher (Dutcher), Marcia V. Kazarosian, Paul Kazarosian, and the Law Office of Paul Kazarosian (Office) pursuant to Mass.R.Civ.P. 12(b)(6). Plaintiff James Carifio (Carifio), represented by Attorney Benton Nadler, filed a complaint which alleges Abuse of Process (Count I) and an invasion of privacy in violation of G.L.c. 214, §1B (Count III). Plaintiff also asks for this court to declare, pursuant to G.L.c. 231A, §1, the rights and liabilities of the parties (Count II). Defendants argue that the plaintiff has failed to state a claim upon which relief can be granted as well as request an award of $1000.00 for attorney fees, costs, and expenses pursuant to G.L.c. 231, §6F and Mass.R.Civ.P. 11(a) to defray their expense in defending against what they assert are plaintiffs “wholly insubstantial, frivolous, and bad faith assertions.”
BACKGROUND
The defendants in this action filed suit in January 1989 in Essex Superior Court on behalf of Edward Carifio in Civil Action No. 89-23, entitled Carifio v. Village Junction Trust, et al.,[2] alleging among other counts misuse of trust funds.
On February 22, 1993, the parties entered into a Stipulation of Dismissal with Prejudice and Without Costs signed by Attorney Janet E. Dutcher (Dutcher) and Attorney Burton Nadler (Nadler). The stipulation contained the following condition:
This Stipulation is entered into with the understanding that the settlement proceeds shall be paid by April 23, 1993. If such proceeds are not paid by April 23, 1993, then this stipulation shall be null and void. Rule 77 Notice is hereby waived.
In correspondence dated March 30, 1993, Nadler asked Dutcher for separate releases for (1) Anna Giampa as Trustee of the Village Junction Trust and individually and (2) for the estate of Luigi Carifio.[3] He indicated that the representative of Luigi Carifio’s estate “has now refused to participate in the settlement as it is currently drafted” and that he would in any continuing litigation have to withdraw from representing the estate due to conflicts between the two parties.
Nadler claims that the docket entry in Essex Superior Court on April 23, 1993 indicates the case was closed. This is one day before the Stipulation of Dismissal would have been null and void if settlement proceeds were not paid. Dutcher claims she never received any order from the Court dismissing the case and based upon continued dealings and correspondence with Nadler reasonably believed the case was still open and unresolved as to Luigi Carifio.[4]
On February 22, 1994, Dutcher issued six deposition subpoenas to the Keeper of the Records of various banks for any and all bank records of James Carifio, George N. Carifio, and Nicholas Carifio to be delivered to her office on March 14, 1994 at 9:30 a.m. Schedule “A” also indicated that if such documents were mailed prior to March 10, 1994, the Keeper of the Records need not appear. Copies of these subpoenas were sent to Nadler at the same time. These subpoenas were *310 issued in good faith based upon Dutcher’s reasonably held belief that an open case still existed.
On March 4, 1994, after communications between Dutcher and Nadler, Dutcher withdrew the subpoenas by writing to each of the banks indicating they were withdrawn and instructing that no records be forwarded. Dutcher acted appropriately.
On March 9, 1994, Nadler, in correspondence with Dutcher, demanded on behalf of his clients $1,000.00 to cover attorneys fees and indicated that unless the funds were paid on or before March 14, 1994, the Verified Complaint would be filed. Dutcher refused to pay and on March 14,1994 the Verified Complaint was filed.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, as well as any inference which can be drawn from those allegations in the plaintiffs favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The “complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) (citations omitted). However, the complaint should also be “construed so as to do substantial justice.” Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991).
I. Abuse of Process
To prevail on such a claim, plaintiff must show that “process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.” Datacomm Interface, Inc. v. Computerworld, Inc. (et al.), 396 Mass. 760, 775 (1986) (citations omitted). Thus, the essential elements of the tort are: (1) use of “process,” in some recognized form; (2) an “ulterior” or illegitimate purpose; and (3) injury. Id. at 775-76 (citations omitted).
Plaintiffs claim that defendants’ actions (issuing subpoenas without docket numbers to non-parties and sending them to opposing counsel) constitute “process” within the meaning of the first element is unsupported by case law. Plaintiffs counsel cites Jones v. Brockton Public Markets, Inc., 369 Mass. 387 (1975), to support his opposition to defendants’ motion to dismiss. However, the language in Jones applies to the instant case as it did in the case the Supreme Judicial Court was deciding:
In order to bring his claim within the parameters of an action for abuse of process, plaintiff argues that the [defendant’s actions] can be considered “process” for purposes of such action. However, he cites no Massachusetts cases to support this proposition, nor have any come to our attention. Undoubtedly this is because our cases on abuse of process have been limited to three types of process: writs of attachment; the process used to institute a civil action; and the process related to the bringing of criminal charges. Thus, under our cases, in the context of abuse of process, “process” refers to the papers issued by a court to bring a party or property within its jurisdiction.
Id. at 389-90 (citations omitted).
In addition, even were this court so inclined to extend the definition of “process” to include the issuance of a deposition subpoena, an abuse of process action also requires plaintiff to show that the opposing party’s action were “ulterior” or “illegitimate,” which the plaintiff has failed to do. Plaintiff has not, for example, shown that the “process” was instituted to coerce plaintiff into paying some sum of money, Kelley v. Stop & Shop Cos., 26 Mass.App.Ct. 557, 558 (1988), to place plaintiff at a disadvantage in another hearing in order to subvert the outcome, id., or to use the litigation as a marketing tool to ensure “substantial disruption and damage” to plaintiff, Datacomm, 396 Mass. at 775.
II. Invasion of Privacy
General Laws c. 214, §1B provides that “[a] person shall have a right against unreasonable, substantial, or serious interference with his privacy. The superior court shall have jurisdiction to enforce such right and in connection therewith award damages.” The Supreme Judicial Court has held that the adjectives “unreasonable,” “substantial,” and “serious" are all essential components of any cause of action under this statute and do not constitute alternative standards. Schlesinger v. Merrill Lynch, Pierce Fenner & Smith, Inc., 409 Mass. 514, 519 (1991).
Plaintiffs arguments against the motion to dismiss are unsupported by case law. For instance, plaintiff has not included a citation for one case which he cites, Digital Equipment Corp. v. Organization Diego Cisneros _ F.Supp. _ (D. Mass. 1994); nor was this court able to find any such decision. While the second case mentioned in plaintiffs brief, Attorney General v. Assistant Commissioner of the Real Property Department of Boston, 380 Mass. 623 (1980), does include the word “privacy,” nowhere is G.L.c. 214, §1B mentioned.[5] Though Haggerty v. Globe Newspaper Co., 383 Mass. 406 (1981), does implicate G.L.c. 214, §1B, the Supreme Judicial Court has ruled that the “reckless and unwarranted publication” of “unsubstantiated” material “just barely” makes out sufficient facts to escape a motion to dismiss. Id. at 407-08. Plaintiffs allegations in the instant case falls short of that standard. Even assuming arguendo that defendants were overreaching when it subpoenaed non-parties to the underlying action, plaintiff still has not averred malice, a pattern of harassment, or any release of information that might constitute a “unreasonable, substantial, or serious interference with its privacy.” See Schlesinger, 409 Mass. at 519; Haggerty, 383 *311 Mass. at 408. As the Supreme Judicial Court has stated, “The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionablé.” Kelley v. Post Publishing Co., 327 Mass. 275, 278 (1951).
ORDER
It is therefore ORDERED that the Motion to Dismiss brought by Defendants Janet E. Dutcher, Marcia V. Kazarosian, Paul Kazarosian, and the Law Offices of Paul Kazarosian, Inc. is GRANTED. This court orders plaintiffs complaint dismissed with prejudice. The defendants’ motion for costs is DENIED.

 Named in the suit were Trustees Anna Giampa and Luigi Carifio, the plaintiffs aunt and father, who were sued individually and as trustees. Edward Carifio is the plaintiffs uncle.

 Luigi Carifio had died in the interim.

 The Court did not have the Essex papers or a copy of any docket entry.

 In addition, though Attorney General was not a motion to dismiss case, plaintiff cites it for the proposition that “[wjhat the defendants say is they can’t agree with the facts and if that is the case, the Motion to Dismiss must be denied.” Plaintiffs Memorandum at 9.