SaNders, Janet L., J.
This is an action for declaratory and injunctive relief pursuant to the Massachusetts Public Record Law, G.L.c. 66, §10. The case is before the Court on a Motion for Preliminary Injunction filed by the plaintiff, the Globe Newspaper Company (the “Globe”). The Motion seeks the disclosure of names and other identifying information of public employees redacted from separation, severance or settlement agreements between the public employees and the named defendants. The agreements without the names were turned over to the Globe a year ago.
The defendants contend that the redacted information falls within two exemptions from disclosure listed at G.L.c. 4, §7 26th (c) protecting “personnel and medical files or information” as well as any other materials “relating to a specific individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” Although ultimately the burden will fall on the defendants to show that these exemptions apply, it is the plaintiff who must demonstrate that a preliminaiy injunction is appropriate. The defendants argue that this latter burden has not been satisfied, particularly since granting the relief that the Globe requests will effectively decide the merits and result in the irrevocable loss of any privacy interest at stake before all parties have had an adequate chance to litigate the issues. This Court agrees, and therefore determines that the Globe’s motion must be Denied.
BACKGROUND
The instant case grows out of a public records request made by the Globe on March 8, 2010 to eight separate state agencies (the “State Defendants”) as well as the Massachusetts Port Authority (“MassPort”). The request sought copies of all “separation, severance, transition or settlement agreements” made with public employees since January 1, 2005 where compensation, benefits or other payments totaled more than $10,000. Responding on behalf of the State Defendants, legal counsel to the Governor produced copies of all requested agreements but redacted from them the names of the public employees who were parties to the agreements together with other information (like job title and address) which could tend to identify them. MassPort (a separate public entity not under the control of the Governor) responded in a similar manner.
That information that was produced included the types of claims which were at issue, the amounts paid to the public employee to resolve the claim, and a range of other information pertaining to benefits (e.g. health insurance) that the employee would receive following his or her termination from employment. Most of the agreements before the Court contain confidentiality provisions.[2] Several include a promise by the public agency employer to provide the departing employee with a neutral employment reference or to limit information that it provides in response to any inquiry, presumably to protect the employee’s future job prospects. Atleast one agreement contains a promise by the public employee not to contact any of his or her colleagues except for “legitimate business reasons,” suggesting that the circumstances leading to the employee’s departure were difficult. All the agreements relate to settling some employment dispute, grievance or employment related litigation.
*500 In June 2010, the Globe made a separate request to the Office of Comptroller (the “Comptroller”) for records and payments exceeding $1,000 made from the Comptroller’s account for all settlements and judgments since January 1, 2005. In response, the Comptroller created a log showing the date and amount of each payment and the identity of the public agency that authorized it. The Comptroller declined to identify the individual recipients, however. The Globe appealed that decision to the Supervisor of Public Records. The appeal was denied.
This lawsuit was filed on March 15,2011. The Office of the Attorney General (representing the State Defendants) immediately notified those employees who were parties to the agreements about the pending litigation. Before hearing on the instant motion, three parties, including two public employee unions and one individual, have moved to intervene. They join in opposing the Globe’s motion.
DISCUSSION
In determining whether injunctive relief is appropriate, this Court applies the test set forth in Packaging Industries v. Cheney, 380 Mass. 609, 616-22 (1980). First, the moving party must show that it has a reasonable likelihood of prevailing on the merits of the underlying claim. Second, this Court weighs the relative harms to the parties if the injunction is or is not granted. Where the defendants are public entities, the public interest is an additional factor that this Court must consider. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). Finally, this Court is mindful of the fact that granting the relief requested here will not preserve the status quo but quite the opposite, deciding the merits of the case within weeks of the action’s initiation, before all parties have had a chance to be heard, and on the basis of a thin record. In that sense, the request for relief is an extraordinary one which this Court should hesitate to allow unless I am convinced that the issues before me are purely legal and are capable of being resolved without additional information or input by the parties.[3]
Turning first to the merits, it becomes quickly apparent that this is not a case where the issues are strictly legal and easily decided on the record before me. The Globe argues that settlement and severance agreements are no more a personnel record than an MCAD complaint or arbitration claim, which are not the types of documents kept in an individual’s personnel file and therefore are not entitled to the protection of the “personnel file" exemption. The defendants counter that, at its core, the exemption applies to “disciplinary documentation” and “termination information” of a particular employee. See Wakefield Teacher’s Ass’n v. School Committee of Wakefield, 431 Mass. 792, 798 (2000). Because the severance agreements all relate to terminating the employee, often as a result of some disciplinary problem or similar dispute, they could very well turn out to fall within the personnel exemption if the factual record were further developed. With regard to the privacy exemption, the Globe maintains that there is no privacy interest at stake at all since names and addresses of public employees do not constitute “intimate details of a highly personal nature.” See e.g. Cape Cod Times v. Sheriff of Barnstable County, 443 Mass. 587, 595 (2005) (names of individuals appointed as reserve sheriffs do not fall within privacy exemption); see also Hastings & Sons Publishing Co. v. City Treasurer of Lynn, 474 Mass.812, 818-19 (1978) (names of municipal employees receiving money for off duty work details are not exempt from disclosure). However, as the Appeals Court noted in Georgiou v. Commissioner of Department of Industrial Accidents, 67 Mass.App.Ct. 428, 434 (2006), whether a privacy interest is implicated in a particular case “requires a somewhat more nuanced examination” that depends on the context in which disclosure is made. In Georgiou, it meant that the employees would be identified as being sufficiently disabled to be out of work for five or more days— enough of a privacy interest to convince the Appeals Court to overturn the lower court’s decision requiring disclosure without a fully developed factual record. In the instant case, the defendants contend that disclosure would mean that people who had terminated their employment relationship with a public agency as result of some disciplinary action or employment dispute would be publicly identified, thus impacting future job prospects or leading to the dissemination of personally sensitive information of an unflattering nature. At the very least, the defendants argue, those individuals whose identities are at risk should be given a full opportunity to be heard. This Court is inclined to agree.[4]
Even if the Globe has demonstrated some likelihood that it will prevail on the merits, this Court is not convinced that the risk of harm to the Globe if no disclosure is ordered outweighs the potential harm to the defendants if the injunction is granted. The harm asserted by the Globe is delay: the Public Records Law manifests the Legislature’s intent that access to public records be granted “without unreasonable delay” and “as soon as is practicable.” G.L.c. 66, § 10(a) and (b); see also 950 C.M.R. 32.05(2). If every request had to be litigated to the conclusion of a full hearing on the merits, this legislative intent would be frustrated. The Globe also argues (persuasively) that the public has a right to know how its tax dollars are spent and that this includes a right to examine the manner in which public employee claims are resolved. Recent events like the probation department scandal underscore the importance of transparency in the process of hiring, managing and compensating public employees. Without knowing who was paid as part of these severance agreements, the Globe—and the public chat it serves— will not be able to determine whether the government spent tax dollars wisely. The question for the Court, *501 however, is not simply whether there is an interest in disclosure but whether that outweighs the harm to the defendants if this Court acts now.
As the defendants point out, the individual interests at stake here are not insignificant: with many of the agreement containing confidentiality clauses, it is apparent that one of the benefits the departing employee expected to receive in resolving his or her claim was to limit the information made available to future employers. To disclose this information without a full consideration of all the issues at stake would be unfair to these individuals and would result in an irrevocable loss of the privacy they bargained for. It would also undermine the agency’s ability to resolve claims without expensive litigation: arguably, there is a public interest in promoting such out-of-court resolution. Finally, there is no pressing need that this information be produced immediately. The Globe has received a great deal of information already, including the amounts paid to public employees in connection with these agreements and the identity of the agency that authorized those payments. The Globe has known for many months that the defendants were refusing to disclose employee names and did not take steps to challenge that decision until a few weeks ago. That the Globe will have to wait a few more months to see if the redacted information must be disclosed seems hardly unfair, particularly when balanced against the irreparable harm which would occur if an order of disclosure entered now.
CONCLUSION AND ORDER
For all the foregoing reasons and for other reasons articulated in the defendants’ Memoranda of Law, the Globe’s Motion for Preliminary Injunction is DENIED.

No date, more than 70 agreements have been produced to the Globe. Of that group, twelve agreements (with redac-tions) were made available to the Court to examine.

As the State Defendants point out in their memorandum, none of the cases cited by the Globe in its memorandum were decided by way of preliminary injunction. More often, issues regarding the applicability of statutory exemptions from public disclosure are decided by way of summary judgment.

The defendants’ position makes even more sense in light of the fact that, if a privacy interest is found to be at stake, then this Court cannot determine whether the privacy exemption applies without balancing those individual interests against the public interest in disclosure. Globe Newspaper Co. v. Police Commissioner of Boston, 419 Mass. 852, 858 (1995). To apply that balancing test properly, this Court needs more information than it currently has.